096-294383-17

**CAUSE NO. _____**

| | | |
|---|---|---|
| **DONALD JAQUESS,** | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| **HARTFORD LLOYDS INSURANCE** | § | |
| **COMPANY,** | § | |
| *Defendant* | § | TARRANT COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION**
and
**REQUEST FOR DISCLOSURE**

1.  Plaintiff, Donald Jaquess, files this Plaintiff's Original Petition complaining of Defendant and for causes of action alleges the following:

**I.**
**Discovery Control Plan/Rule 47 Statement**

2.  Plaintiff intends to conduct discovery under a Level 2 Discovery Control Plan until such time as a Level 3 Discovery Control Plan is ordered by the Court. Pursuant to TRCP Rule 47, Plaintiff seeks monetary relief of more than $200,000.00, but not more than $1,000,000.00, and demands judgment for all other relief to which the Plaintiff deems itself entitled.

**II.**
**Parties and Service of Citation**

3.  Plaintiff, Donald Jaquess is an individual who is a resident of Tarrant County, Texas.

4.  **Defendant, Hartford Lloyds Insurance Company,** is an insurance company who transacts business in the State of Texas and may be service with process by serving its registered agent: **C T Corporation System** at the registered address of **1999 Bryan Street Suite 900, Dallas TX 75201.**

---

PLAINTIFF'S ORIGINAL PETITION                                                                 PAGE 1 of 8

**EXHIBIT C**

### III.
### Venue/Jurisdiction

5.  Venue is proper in Tarrant County where the real property made the subject of this lawsuit is located and is where all or a substantial part of the events or omissions giving rise to the claim occurred. CP&RC §15.002(a)(1). The damages and relief sought are within the jurisdictional limits of this court.

### IV.
### Operative Facts

6.  Jaquess' claims arise from a lightening strike to the above-referenced residence in 2006. Lightening struck the residence shaking the foundation and chimney causing the foundation to subside, collapse, or fall down approximately three inches. The concrete slab deck surrounding a swimming pool immediately adjacent to the foundation also subsided approximately three inches. Both the foundation and the pool deck cracked as a result of the lightening strike. The swimming pool deck slab is in exceedingly close proximity to the Chimney, being approximately only three feet away.

7.  Hartford insured Jaquess' property for such casualties. Hartford sent an engineer to the residence in 2007. Hartford covered the cost of placing approximately 27 piers to lift the foundation slab back to its pre-existing level. Hartford covered the cost for a cosmetic overlay of the pool deck, but did not undertake any investigation as to possible structural damage to the pool.

8.  Jaquess started noting that the pool began losing water but could not ascertain the source of the leak. Mr. Jaquess notified Hartford of the water issue but Hartford still did not undertake any investigation. By 2015, the water problem was so pervasive that the neighbor complained of water leaking into his yard. Jaquess accordingly undertook his own investigation, he had the pool drained and cut away portions of the fiberglass pool liner.

9.  Jaquess relied upon Hartford's preliminary engineering investigation that no structural investigation of damage or injury to the pool was necessary by delaying undertaking his own investigation.

10. It was only then that Jaquess learned of a pipe in which a joint had come apart. On August 16, 2016 Mr. Luis DeJesus inspected the pool on Hartford's behalf and issued a report dated August 29, 2016. DeJesus concluded that the pipe leak was not caused by the lightening

**EXHIBIT C**

strike but rather became disconnected when the adjacent foundation was repaired. Hartford denied coverage based upon DeJesus's report.

11.   As a result of Hartford's denial of coverage, Jaquess hired his own engineer named Barney Ballard to inspect the pool as regarded the lightening strike and the pipe. Mr Ballard concluded in his report dated October 13, 2016 that the lightening strike caused the soil to shift and damaged the swimming pool just as it did damage to the house. In response, DeJesus issued another report dated November 21, 2016 wherein DeJesus reiterated that: "that the lightning strike did not directly cause the damage to the pool, and the pipe causing the damages was disconnected during the installation of piers." DeJesus did not address Hartford's refusal or failure to inspect the structural impact of the lightening around the pool despite the pool deck having collapsed some three inches. DeJesus failed to address how the foundation could have been repaired by rasing it with piers without influencing the structure of piping around the pool, particularly when the issue was not even known at that time as Hartford had instructed its initial engineer to disregard any structural damage around the pool associated with its three inch collapse. DeJesus failed to address that the pool deck had also collapsed approximately three inches along with the foundation as a result of the lightening strike. DeJesus did not dispute that the condition of the pipe being compressed downward after the lightening strike was unrelated to the lightening strike or the result of any other cause.

12.   Hartford contractually agreed to provide coverage for the subject loss. Jaquess timely made demand for coverage. However, Hartford has refused and continues to refuse to indemnify Jaquess.

13.   All conditions precedent to suit have been performed, have occurred, or are excused.

## V.
### Count One - Contract

14.   Incorporating foregoing and following and without prejudice to same, Jaquess asserts claims against Hartford for breach of insurance contract. Jaquess and Hartford freely entered the Policy of insurance, and it is supported by adequate and valid consideration. As such, it constitutes an enforceable contract between the parties.

EXHIBIT C

15.     Under the express terms of the Policy, Hartford agreed to certain duties assumed by the insurer. Upon presentation of this claim, Hartford refused and continues to refuse to compensate Jaquess for his loss that is within the Policy coverage provisions such that they constitute a breach of the insurance contract.

16.     Hartford's breach has caused Jaquess to incur actual and consequential damages. Defendant's breach of contract has caused and continues to cause Plaintiff substantial actual and consequential damages in an amount within the minimum jurisdictional limits of this Court. These damages include, but are not necessarily limited to $65,000.00 to replace the pool, $3,485.00 as the cost to investigate pool leak and cost to tear out pool liner, $3,925.00 as the cost to fill the empty pool with sand to avoid repeated citations in the amount of approximately $3,500 threatened by the City of Arlington for a health and safety hazard of an empty swimming pool, and $800 in engineering investigation expenses.

17.     Additionally, Jaquess has secured the assistance of counsel in prosecuting of this claim. Pursuant to Tex. Civ. Prac. & Rem. Code §38.001,.002, Tex. Bus. & Com Code, §17.50(d), and/or Tex. Ins. Code §541.1529(a)(1), Jaquess is entitled to recover his reasonable and necessary attorneys' fees and costs incurred in connection with the case.

18.     Jaquess asserts that Hartford had sufficient information on or about the date of DeJesus' original inspection on August 16, 2016 and should have paid the foregoing claim on or about that date but refused to do so. Jaquess asserts he is entitled to recover 18% simple annual interest commencing 60 days after that date or October 17, 2016 through the present pursuant to Tex. Ins. Code 542.060. The accumulated interest as of the date of this letter is $50,534.78 and continues to accrue at the rate of approximately $177.32 per day.

## VI
### Counts Two - Breach of Duty of Good Faith and Fair Dealing

19.     Incorporating foregoing and following and without prejudice to same, Jaquess asserts claims against Hartford for breach of a duty of good faith and fair dealing. Given the existence of the Policy, the relationship between Jaquess and Hartford is one recognized as giving rise to a duty on the part of Hartford to deal fairly and in good faith with Jaquess with respect to the Policy.

**EXHIBIT C**

20.  Under the express terms of the Policy, Hartford agreed to provide coverage for the subject loss. Upon presentation of this claim, Hartford refused and continues to refuse to indemnify and pay Jaquess for the loss.

21.  Hartford's conduct constitutes a breach of the duty of good faith and fair dealing owed to Jaquess. Specifically, Hartford had no basis for denying or delaying coverage or a defense or, alternatively, Hartford failed to determine whether there was a reasonable basis for the denial or delay. Hartford knew or should have known that no reasonable basis for the denial of the claim existed.

22.  Hartford's conduct was the actual and proximate cause of actual economic and non-economic damages to Jaquess. Hartford's breach of the duty of good faith and fair dealing caused and continues to cause Jaquess to incur actual economic and non-economic damages in an amount within the jurisdictional limits of this Court. Jaquess' damages include, but are not necessarily limited to costs and injuries associated with the loss, mental anguish, sever grief and depression, indignation, despair, and out of pocket expenses.

23.  Jaquess asserts that Hartford's misconduct referenced above was committed knowingly and/or intentionally, which caused him mental anguish that resulted in physical symptoms resulting from stress including, loss of sleep and wight loss. Jaquess' blood pressure skyrocketed and his physician doubled his blood pressure medication as a result. The circumstances were exacerbated by Mrs. Jaquess' critical physical condition. Jaquess wife, Barbara, was suffering from terminal pancreatitis during the foregoing events. Jaquess had to keep moving Barbara from room to room just to allow for installation of the foundation piers and she required round the clock care and attention. Jaquess' physician increased Jaquess' prescription of stress medications as a result. Jaquess accordingly requests judgment for mental anguish and/or emotional distress.

24.  Furthermore, because Hartford's misconduct was so egregious, and committed through fraud and/or malice, Jaquess is entitled to recover exemplary damages as permitted by Tex. Civ. Prac. & Rem. Code Chapter 41, *et. seq*.

25.  Jaquess asserts claims and requests judgment against Hartford for both pre-judgment and post-judgment interest at the maximum rate allows.

VII.

**EXHIBIT C**

### Violations of the Texas Insurance Code

26. Incorporating foregoing and following and without prejudice to same, Jaquess asserts claims against Hartford for violations of the Texas Insurance Code chapter 541 *et. seq.* Hartford was given notice in writing of the claims made in this petition including a statement of Jaquess' economic damages, expenses, and attorney's fees before this suit was filed. Jaquess filed suit to prevent uncertainty as to expiration of the statute of limitations presented by Hartford's delays in addressing Jaquess' claims.

27. Jaquess asserts that Hartford violated Tex. Ins. Code Section 541.060 by engaging in the following false, misleading, or deceptive acts, or practices pursuant to Tex. Ins. Code §541.060(a) of the in the following regards:

- misrepresenting a material fact or policy provision

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear

- failing to provide a reasonable explanation for denying or compromising a claim, and/or refusing a claim without making a reasonable investigation

28. Jaquess contends that Hartford violated Tex. Ins. Code §541.061 in the following regards:

- making an untrue statement of material fact

- failing to state a material fact necessary "to make other statements made not misleading, considering the circumstances"

- making a statement that would mislead a "reasonably prudent person" into making a wrong   conclusion, and/or

- making a material misstatement of the law.

29. Hartford's conduct was a producing cause of actual damages suffered by Jaquess.

30. Hartford acted knowingly in committing these acts and practices. Therefore, Jaquess seeks the imposition of trebled damages under Tex. Ins. Code §541.152(b).

**EXHIBIT C**

## VII.
### Violations of the Texas Deceptive Trade Practices Act

31. Incorporating foregoing and following and without prejudice to same, Jaquess asserts claims against Hartford for violations of the Texas Deceptive Trade Practices Act (the "DTPA"). Jaquess is a consumer within the ambit of the DTPA. Jaquess asserts that Hartford's violation of the foregoing Texas Insurance Code sections also constitute false, misleading, and/or deceptive acts or practices under the DTPA pursuant to Tex. Ins. Code §541.151 as well as other violations of Section 17.46(b) of the DTPA in the following regards:

(5) representing that goods or services have sponsorship, approval, characteristics, or benefits, which they do not have;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and/or

(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

32. Hartford engaged in unconscionable conduct or course of conduct in the transaction with Jaquess in violation of DTPA §17.50. Hartford's conduct took advantage of Jaquess' lack of knowledge, ability, experience, or capacity to a grossly unfair degree and/or resulted in a gross disparity between the value received and the consideration paid so as to cause damages to Jaquess.

33. Hartford acted knowingly in its transaction with Jaquess as complained of in this petition. Jaquess is therefore entitled to recover damages for mental anguish, and treble the amount of economic damages found by the trier of fact, amounts within the court's jurisdictional limits of this court.

34. Hartford acted intentionally in committing the acts complained of in this petition. Jaquess is therefore entitled to recover damages for mental anguish, and to recover treble the amount of economic and mental anguish damages, amounts within the court's jurisdictional limits.

**EXHIBIT C**

## IX.
## Request for Disclosure

35. Under Texas Rule of Civil Procedure 194, Jaquess requests that Hartford disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

**WHEREFORE**, Plaintiff asks that the court issue citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

a. Actual damages,

b. Non-economic damages,

c. Statutory or Exemplary Damages;

d. Prejudgment and Postjudgment Interest;

e. Attorneys fees

f. Court costs; and

g. All other relief to which Plaintiff is entitled.

Respectfully submitted,

**HACH LAW OFFICE**

By: /s/ *Gary Lee Hach*
**Gary Lee Hach**
State Bar No. 08667020
312 W. Northwest Hwy.
Grapevine, Texas 76051
(817) 421-3600 telephone
(817) 421-3680 telecopier
gary@hachlaw.com
*ATTORNEY IN CHARGE FOR PLAINTIFF*

**EXHIBIT C**